Laney et ux. *v.* Columbia Natural Gas Co.,
Appellant.

Argued October 6, 1931. Before Frazer, C. J., Wall-
ing, Simpson, Kephart, Schaffer, Maxey and Drew,
JJ.

*Edward M. Borger,* with him *John A. Scott, Arthur E. Young* and *Denton Borger,* for appellant.—There is no ambiguity in the written lease which would justify or permit the introduction of parol evidence in explanation thereof: Fellbush v. Egen, 221 Pa. 420; American Dressler Tunnel Kilns v. Holt, 269 Pa. 293; Kemerer's Est., 251 Pa. 283; Lennox Coal Co. v. Coal Co., 265 Pa. 572; Sutcliffe v. Bakes, 62 Pa. Superior Ct. 65.

Defendant not only contends that the construction of this lease was for the court, but also that the court should have construed the lease to require the quarterly royalty payments to be based on quarterly tests of the pressure of the respective wells.

All prior negotiations as to its terms are merged in the written contract: Nick v. Craig, 301 Pa. 50, 56; Murphey v. Greybill, 34 S. C. 339, 347, 348; Vito v. Birkel, 209 Pa. 206; Cozens v. Stevenson, 5 S. & R. 421; Ency. of Evi., volume 9, page 330; Russell v. Glass Works, 6 S. C. 118; Harris v. Sharpless, 15 Pa. Superior Ct. 643; Cowles Electric Co. v. Lowery, 79 Fed. 331; Tittle v. Burgett, 42 N. E. 428.

There being no latent ambiguity, parol evidence of the parties' intention is inadmissible: Martin v. Berens, 67 Pa. 459; McDermott v. Ins. Co., 3 S. & R. 604; Wright v. Weakly, 2 Watts 89; Fisher v. Deibert, 54 Pa. 460.

*Fred Trescher,* of *Kunkle, Walthour & Trescher,* with him *William Ruddock,* for appellees.—Experts for the gas company came into court and testified that the three words "first minute pressure" also mean the same as

"minute pressure." In the minds of the plaintiffs the terms of the lease are absolutely clear and complete in every respect. This construction gives effect to every part of the lease and makes it a complete agreement in accordance with the decisions of McMillin v. Titus, 222 Pa. 500, 502; Brown v. Brooks, 25 Pa. 210; Ketcham v. Trust Co., 71 Pa. Superior Ct. 376; McCann v. McCrea, 18 Pa. Superior Ct. 456; Sweigert v. Hartzell, 20 Pa. Superior Ct. 56.

Under the pleadings in this case and the testimony to sustain them, the court could do nothing but submit the matter to the jury: Fellbush v. Fellbush, 216 Pa. 141.

In construing a contract it is proper and sometimes necessary to consider the circumstances under which it was made for the purpose of ascertaining the intentions of the parties: Cox v. Freedly, 33 Pa. 124; Miner's App., 61 Pa. 283; Meigs v. Lewis, 164 Pa. 597; Rochester & Pitts. V. & I. Co. v. Coal Co., 271 Pa. 394.

There are numerous authorities for the proposition that surrounding circumstances and relation of the parties and the necessities for which they would probably provide are admissible to explain doubtful language in an instrument: Equitable Gas Co. v. Limegrover, 54 Pa. Superior Ct. 250; Thatcher v. Ry., 35 Pa. Superior Ct. 615; Moore v. Ins. Co., 199 Pa. 49; McKeesport v. Ins. Co., 173 Pa. 53; Rochester & Pitts. C. & I. Co. v. Coal Co., 271 Pa. 394.

OPINION BY MR. JUSTICE DREW, November 23, 1931:

This is an action in assumpsit to recover royalties under a certain oil and gas lease. After verdict and judgment for plaintiffs, defendant appealed.

The principal question in the case, and the one out of which the other questions grow, is whether or not the written lease is so ambiguous as to require and permit the introduction of parol evidence to explain its meaning. The learned court below decided this question in

the affirmative, and its action in so doing is assigned as error.

The plaintiffs, on February 7, 1924, leased a tract of land in Indiana County to the American Natural Gas Company, which lease was assigned to the defendant, Columbia Natural Gas Company, on or about July 7, 1926. Under this lease the defendant's predecessor in title entered and drilled two wells, and a pressure reading was taken immediately or very soon after the completion of each well. It was admitted that the lessee had marketed gas off the premises from each well until the time of filing suit.

The lease contained the following gas royalty clause: "Should any well not produce oil, but produce gas, and the gas therefrom be sold off the said premises, the consideration to the parties of the first part for the gas from each well from which gas is marketed shall be at the rate of $20 per lb. per annum first minute pressure based on six-inch casing, to be paid quarterly while marketed. The minimium royalty for each gas well drilled to be $150 per annum." The lease was prepared by the representative of the company, who negotiated for it. He made use of a printed form, inserting in his handwriting in the printed clause the words: "$20 per lb. per annum first minute pressure based on six-inch casing." He also struck out of the lease the following printed words: "except while any well shows a pressure of less than 200 pounds per square inch upon being confined for five minutes, in which case the consideration for the gas shall be at the rate of......dollars per annum, to be paid quarterly while marketed" and inserted in handwriting the following: "The minimum royalty for each gas well drilled to be $150 per annum."

The entire dispute between the parties revolved around the interpretation of the provision—"$20 per lb. per annum first minute pressure based on six-inch casing."

The plaintiffs contend that the true intent and meaning of the phrase is and was that the first minute pressure reading of each well should be taken as soon after the completion of each well as practicable, and that payment should be made to the plaintiffs at the rate of $20 per pound per annum, based on six-inch casing and the first minute pressure taken as soon after the drilling of the well as practicable so long as gas was produced from that well and sold off the premises. The defendant, to the contrary, contends that the true intent and meaning is and was that payments should be made to plaintiffs quarterly at the rate of $20 per pound per annum based upon tests of the first minute pressure in six-inch casing, such tests to be made quarterly for the purpose of determining the royalty due for each quarter.

The learned trial court ruled that the lease was ambiguous in this respect and admitted testimony to show what was in the minds of the parties at the time they made the lease. This testimony was admitted not to vary the written instrument but solely for the purpose of making clear how the royalty was to be determined, whether by one test or by quarterly tests.

The plaintiffs, in support of their contention, testified concerning the negotiations for the lease and certain circumstances surrounding its execution, together with the interpretation which was placed on it by the parties at the time. Their testimony was to the following effect: that shortly before the making of the lease large producing wells had been drilled on neighboring property and that representatives of the American Natural Gas Company called on them several times for the purpose of negotiating a lease; that these representatives proposed a flat rate which plaintiffs refused demanding a pound pressure basis; that the representatives advised them that a flat rate would be more to their advantage, as the company might reduce the pressure by pumping the wells if they leased on a pressure basis, which would diminish their payments under the lease, and that then

they conceived the idea of leasing at a flat rate, this rate to be determined, however, once and for all, by the result of the first pressure test. Plaintiffs claim the representatives of the company then agreed to this basis, and the lease was accordingly made. The defendant denied that the lease was made on such basis, and one of its representatives stated that he told plaintiffs that the well would be tested quarterly.

The plaintiffs testified further that during these negotiations they refused to sign a standard form of lease which provided for the taking of minute pressure tests quarterly with payments based on such quarterly readings, and that then the lease agreed upon was executed on a printed form, the representative of the company writing in the words "$20 per lb. per annum first minute pressure based on six-inch casing," and striking out the printed portion of the lease providing for a reduction of the payments in event that the pressure fell below a certain point, and inserting in its stead the clause which provided that the minimum royalty for each well drilled was to be $150 per annum.

The plaintiffs also showed that after the completion of the first well it was gauged within seven days but that no subsequent gauges of it were taken for a period of two and one-half years and that payments to them were based on that first pressure reading; that the minute pressure on the second well was taken the day after its completion, and payments based on that reading, and that no other pressure reading was taken for a period of one and one-half years.

The plaintiffs produced in evidence a letter written by the assistant general manager of the defendant to Mr. Laney, one of the plaintiffs, dated November 17, 1926, to show that the interpretation placed on the contract by the defendant at that time was the same as the interpretation of the plaintiffs. The first paragraph of this letter reads as follows: "About a week ago Mr. Borger and Mr. Nicklas paid you a visit regarding royalty on

your two gas wells. Your refusal to change the royalty provision has caused us to reconsider the matter. We will now pay the royalty as provided for in the lease even though the gas has not been used off the premises to any extent since the completion of the wells. This is as you desired it."

In support of its position defendant contends strenuously that the words "first minute pressure" have a technical meaning and that the word "first" modifies only the word "minute" and not the word "pressure," and that there is a custom in the gas industry when wells are leased on a pressure basis to take pressure readings quarterly and to base payments on quarterly readings.

Mr. Heck testified that, representing the American Natural Gas Company, he procured the lease from the plaintiffs. He said that when the lease was written he suggested the words "first minute pressure," and that he intended the word "first" to indicate the "first minute" rather than the "first pressure" or initial minute. He admitted that the plaintiffs refused to sign a standard form of lease which used the words "minute pressure" and provided for the gauging of wells each quarter, but asserted that they did not take exception to the provision which provided for quarterly tests of the wells. He stated he told them that the wells would be tested quarterly.

Mr. Robinson, a geological engineer employed by the defendant, testified that the words "first minute pressure" have a technical meaning in the gas business and mean the amount of pressure shown upon a gauge after a well has been closed in for a period of one minute. He and others testified that it was the custom or usage in Indiana County "that wells which are based upon a minute pressure gauge and royalty paid for quarterly, such tests are taken at the middle of the quarter in which the payment is due." He stated this custom was followed where the lease has no express provision when a test shall be taken; and that the custom had existed

to his knowledge for more than fifteen years, and was well known to those in the oil and gas business. On cross-examination, and over objection, he was shown a number of leases taken at random from the records of Indiana County and was asked to point to any lease providing for payment based on quarterly pressure tests which failed so to provide specifically. He was unable to do so. No attempt was made to show that such alleged custom was known generally to the people of Indiana County or to the plaintiffs.

The case was submitted to the jury by the learned trial court on these conflicting facts in a very intelligent charge in which we find no error.

Defendant has assigned as error the action of the lower court in submitting the construction of the lease to the jury, in failing to construe it as a matter of law, and in admitting evidence of conversations and negotiations leading up to the execution of the lease. These assignments are based on defendant's contention that there is no ambiguity in the phrase "first minute pressure" and that therefore the evidence by which plaintiffs sought to explain its meaning should not have been admitted. With this we cannot agree. It seems to us that the phrase might well bear either the meaning ascribed to it by the plaintiffs or that ascribed to it by defendant, and that it is necessary to resort to extrinsic evidence to remove the doubt. This being true, evidence of the prior negotiations and contemporaneous understanding between the parties to the agreement was admissible to remove the ambiguity by showing which meaning was attached to it by them: Quigley v. DeHaas, 98 Pa. 292; Edmonds v. First Nat. Bank, 215 Pa. 547; Simon v. Myers, 284 Pa. 3.

In Quigley v. DeHaas, supra, there was a contract to erect certain dams "in a good and sufficient manner, as flood dams should be built in such streams......" It was held that parol evidence was admissible to explain the understanding of the parties at the time of the ex-

ecution of the contract as to how the dams were to be built. This court said: "To us it seems obvious that, in order to make this intelligible to a jury, some explanation was necessary, either from experts or from the understanding of the parties expressed at the time of the making of the contract, but of these two methods of arriving at the meaning of this agreement, the latter was the better, as being the interpretation given to it by those most interested, hence, the one which would be the most likely to express their intention." In Edmonds v. First Nat. Bank, supra, a written contract provided that the plaintiff was to do all the work on a certain building which was "properly brick work." The obligation to do all the brick work was made clear by the agreement, but what was "properly brick work" was not. It was held competent in aid of the construction of the writing to admit parol evidence to prove the understanding of the parties at the time in respect to it. The ambiguity here is of the same nature, and the evidence was "properly received, not to vary the writing, but to explain the meaning of doubtful terms": White Heat Products Co. v. Thomas, 266 Pa. 551. It was also clearly proper to admit evidence of the extrinsic circumstances surrounding the parties at the time the agreement was made: Meigs v. Lewis, 164 Pa. 597; Garvin v. Lancaster Co., 290 Pa. 448. Since the interpretation of the expression depended on the effect of parol testimony, it was a question for the jury: Laidley v. Rowe, 275 Pa. 389. See also Phila. v. Stewart, 201 Pa. 526.

The tenth and eleventh assignments assert that the court erred in admitting evidence relating to certain provisions contained in other oil and gas leases taken at random from records in Indiana County, which evidence was objected to as irrelevant and immaterial. This evidence came into the case on cross-examination of defendant's witnesses for the purpose of contradicting their testimony. Whether the evidence had this effect was a question for the jury. It was also offered for the pur-

pose of rebutting any idea of a well-established custom or usage, as testified to by the same witnesses. Under these circumstances we think this evidence was relevant.

Defendant also complains of the affirmance of plaintiffs' first point for charge, which was to the effect that where a contract is ambiguous "it will be construed most strongly against the party preparing it or using the words concerning which doubt arises." This was a correct statement of the law. See Algonquin Coal Co. v. Northern Coal & Iron Co., 162 Pa. 114; Advance Industrial Supply Co. v. Eagle Metallic Copper Co., 267 Pa. 15; Duncan v. Pittsburgh-Florida Fruit Growers' Assn., 282 Pa. 498. It was proper to affirm the point on the facts of this case. The ambiguous words in the lease were written into it by the representative of the lessee.

It is hard to escape the thought, that on November 17, 1926, when defendant by its assistant general manager wrote to plaintiffs, the company then regarded the consideration under the lease as having been fixed by the first minute pressure taken upon the completion of the well. The letter says: "Your refusal to change the royalty provision has caused us to reconsider the matter. We will now pay the royalty as provided for in the lease......" The assistant general manager, who wrote the letter, testified: "Q. You wanted a different basis than was provided in this lease? A. Yes. Q. And Mr. Laney refused to change that basis? A. Yes." This letter and testimony is truly significant and would seem to be almost conclusive that at that time the defendant did not believe that the lease provided for quarterly pressure takings and payments based thereon, but desired to change to that basis. The fact that defendant apparently placed that construction on the contract was strong evidence that the words were intended to have the meaning alleged by plaintiffs.

We find no error in the record. We think the case was tried and submitted in an able and impartial manner,

and that the verdict rendered was a proper one under the facts and law of the case.

In what we have stated we have discussed all the assignments of error possessing merit. All assignments are overruled and the judgment is affirmed.