Morgan, Appellant, *v.* Phillips.

Argued March 15, 1956. Before STERN, C. J., JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Leland W. Walker,* with him *Walker & Kimmel,* for appellant.

*Simon K. Uhl* and *William Moldovan,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, April 18, 1956:

In order to recover in this case plaintiff was confronted with a difficult burden, but whether he succeeded in establishing his claim was a question for the jury and not for the court and therefore the court erred in entering a nonsuit and subsequently refusing to remove it. Plaintiff's appeal is from that refusal.

On September 2, 1952, plaintiff, Irvin S. Morgan, entered into an agreement with the defendants, who were partners trading as Niverton Coal Company (hereinafter called Niverton), wherein he leased from them the right to strip-mine a tract of coal consisting of 112 acres owned by them in Elk Lick Township in Somerset County. The agreement had been prepared by Niverton, but, when presented to plaintiff for his

signature, he found that it was not in accord with the preliminary negotiations. Accordingly he discussed with Charles A. Phillips, one of the partners, certain amendments which he requested should be made. Two weeks later Phillips returned and submitted to him a paper, partly typed and partly written, which was captioned: "Changes agreed to before the lease signed"; there were also some erasures and changes made in the original draft itself. Both plaintiff and Phillips thereupon signed the agreement, to which the signatures of the other partners had already been appended, and Phillips left with plaintiff a copy of the agreement with the additional paper (referred to in the testimony as "Exhibit A") attached thereto.

As to the erasures and changes in the original draft and all but one of the provisions in "Exhibit A" there is no dispute between the parties, plaintiff and Phillips apparently agreeing in their testimony with respect thereto. But as to one item, vital to the present issue, there was complete disagreement. "Exhibit A" created changes in what were referred to as "paragraphs 3, 7 and 9" of the original draft, and, while there was no such actual numbering in the draft, no question arises as to the application of those changes to the respective paragraphs therein. There followed, however, on "Exhibit A" the words on one line: "Paragraph 11. Only apply to law of Penna.," and on the next line: "Paragraph 11. Voided." The words "Only apply to law of Penna." clearly and properly relate to the eleventh paragraph which dealt with the obligation of the lessee to restore the surface after stripping. But to what did the succeeding words: "Paragraph 11. Voided" apply? It was plaintiff's contention that they referred, not to the eleventh, but to the twelfth paragraph which prohibited the lessee from transferring

or assigning the rights granted by the lease or subletting the premises or any part or portion thereof without the prior written consent of the lessors. He testified that it had been agreed between him and Phillips that this paragraph was to be voided and that the figure "11" in the line in question was presumably a mistake in the typing. Phillips, on the other hand, denied that there had been any such agreement as to paragraph 12, although it is significant that he offered no explanation as to how it could have been intended that Paragraph 11 was to "apply to law of Penna." and at the same time be "Voided."

The reason for the importance of the issue thus arising was that plaintiff, after obtaining his lease, found himself unable to operate the property because, as he testified, his equipment was employed elsewhere. Accordingly, on January 26, 1953, he entered into an agreement with one David C. Jones, wherein he engaged the latter to strip-mine the property, a royalty to be payable by Jones of 55 cents per ton; this arrangement constituting in effect a subletting. Niverton had provided for a royalty of only 40 cents per ton, and hence he stood to profit at the rate of 15 cents per ton on whatever coal should be mined by Jones. However, the latter, like plaintiff himself, had no equipment of his own available with which to operate, but in March he commenced to strip-mine with equipment owned by the defendant W. & R. Corporation of which he was an employee and the general superintendent. At or about that same time, namely on March 19, 1953, Niverton entered into an agreement with W. & R. Corporation wherein they gave to the latter the exclusive right and privilege to strip-mine the property, the royalty to be 40 cents a ton. Under this agreement W. & R. Corporation carried on operations for some five or

six months during which period they mined 3,336 tons of coal.

Plaintiff brought the present action to recover against Niverton and W. & R. Corporation the sum of 15 cents per ton on all the merchantable coal which underlay the tract and which he claimed he would have been entitled to remove under his lease, the 15 cents being the excess of the royalty which Jones had agreed to pay him over the 40 cents payable by him to Niverton, and of which profit he was allegedly deprived by reason of Niverton's leasing the property to W. & R. Corporation in violation of his rights under his own lease. The court entered a nonsuit on the ground that the written agreement between plaintiff and Niverton could not be altered by his testimony concerning the oral agreement with Phillips that the paragraph forbidding assignment or subletting of the lease was to be voided.

The court's entry of the nonsuit was improper as to Niverton. It is of course true that in the absence of fraud, accident or mistake parol evidence of a prior or contemporaneous oral representation or agreement which varies, modifies or conflicts with a complete written agreement is inadmissible in evidence. Here, however, as was not disputed by Phillips, the amendments agreed upon were reduced to writing and were effectually made a part of the contract before plaintiff was willing to sign, and did sign, the agreement. The original draft and the additional paper ("Exhibit A") making the changes therein were thereby formed into an integrated contract, and therefore the principle of evidence invoked by the court did not apply: *Petrie v. Haddock,* 384 Pa. 7, 119 A. 2d 45. However, a difficulty does arise by reason of the fact that in the paper thus added to the contract there was an obvious

mistake or ambiguity in that the two references to "Paragraph 11" were inconsistent with one another and obviously both could not have been intended to apply to the same paragraph. Plaintiff, as already stated, testified that the second line was meant to refer to paragraph 12 which dealt with the non-assignability of the lease, this being in accordance with his agreement with Phillips on that subject. His testimony giving this explanation was clearly admissible because, apart from the fact that it was for the purpose of correcting a manifest mistake, it is well established that, where a written instrument is ambiguous, either party may produce oral evidence to resolve the ambiguity, such evidence being admitted, not to add to or detract from the writing, but merely to ascertain the meaning of the parties. The authorities so holding are legion.* It is true that plaintiff's testimony was contradicted by Phillips whom plaintiff called as for cross-examination, but plaintiff was not bound by his testimony which was for the consideration of the jury together with the opposing testimony of plaintiff himself.

---

* Examples: *Caley v. Philadelphia & Chester County Railroad Company*, 80 Pa. 363, 370; *Centenary M. E. Church v. Clime*, 116 Pa. 146, 151, 9 A. 163, 165; *Edmonds v. First National Bank of Connellsville*, 215 Pa. 547, 64 A. 671; *Simon v. Myers*, 284 Pa. 3, 8, 130 A. 256, 258; *Campbell Coal & Coke Co. v. Pennsylvania Railroad Co.*, 288 Pa. 36, 135 A. 650; *Schwartz v. Whelan*, 295 Pa. 425, 430, 145 A. 525, 527; *Laney v. Columbia Natural Gas Company*, 305 Pa. 527, 534, 158 A. 266, 268; *Security Trust Company of Pottstown v. Stapp*, 332 Pa. 9, 13, 1 A. 2d 236, 238; *Kittaning Coal Company v. Moore*, 362 Pa. 128, 131, 66 A. 2d 273, 274; *Waldman v. Shoemaker*, 367 Pa. 587, 591, 80 A. 2d 776, 778; *Lipsie v. Dickey*, 375 Pa. 230, 234, 235, 100 A. 2d 370, 373; *Sarver's Estate*, 132 Pa. Superior Ct. 238, 244, 200 A. 709, 711; *Dorrington v. Manning*, 135 Pa. Superior Ct. 194, 200, 4 A. 2d 886, 889; *Fischer v. Anderson*, 173 Pa. Superior Ct. 175, 178, 179, 96 A. 2d 168, 170. See also 32 C.J.S. p. 891, §959.

While plaintiff, as thus indicated, was entitled to have the jury pass on his assertion that his final agreement with Niverton voided its proposed original prohibition against assignments and sublettings, and while, therefore a new trial must now be granted, plaintiff's right to recover will ultimately depend upon certain other factors in the case. Thus he will be obliged to meet Niverton's contention that he lost his rights under his lease by his failure to proceed diligently to mine the coal as required by the terms of the lease. He must also, in order to recover, reasonably establish, not the total amount of coal presumably in the ground, but the tonnage he would probably have been able, under all the circumstances, to strip-mine during the term of his lease, it appearing in this connection that during the period between the execution of the lease and the time when W. & R. Corporation entered upon the property he had not mined any coal whatever; while W. & R. Corporation mined 3,336 tons between March and October, whether he himself would have been able to do so in view of the lack of equipment both of himself and Jones is a question that would have to be resolved by the jury.

As far as W. & R. Corporation is concerned, that defendant, unlike Niverton, owed no contractual duty to plaintiff, and any liability on its part can rest solely on the theory that it was a trespasser in removing coal as to which he had the mining rights. If plaintiff ultimately succeeds in his action against Niverton,—that is to say, if he did not forfeit his rights under his lease by subletting to Jones or by failing to mine with due diligence, and if he can establish the amount of coal that he would probably have been able to mine during the term of his lease, he might then have an action against W. & R. Corporation to recover his loss of roy-

alty on the tonnage removed by that defendant. Any such recovery, however, being based on trespass, must be sought in a separate action, and not in the present suit against Niverton for alleged breach of the contract of lease. Accordingly the nonsuit granted by the court was not improper as to W. & R. Corporation.

The order of the court refusing to take off the nonsuit as to Niverton is reversed and a new trial is granted as to that defendant. The order of the court granting a nonsuit as to W. & R. Corporation is affirmed.