Pavlich et ux., Appellants, *v.* Ambrosia Coal
and Construction Company,
Appellant.

Argued November 18, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and POMEROY, JJ.

reargument refused January 22, 1971.

*Errol Fullerton,* with him *Morgan H. Sohn, Alfred Papa,* and *Reed, Sohn, Reed & Kunselman,* for plaintiffs.

*W. Walter Braham,* with him *Chris J. Mitsos* and *Glenn McCracken, Jr.,* for defendant.

OPINION BY MR. JUSTICE JONES, January 7, 1971:

We are presented here with cross appeals taken by the Pavlichs ("lessors" and appellants in Appeal 252) and by Ambrosia Coal and Construction Company ("lessee" and appellant in Appeal 260) from a final decree refusing five of the lessors' causes of action but

granting their sixth. We shall discuss each appeal separately.

## Number 252, March Term, 1970

Subject to a written "lease" which was subsequently revised and partially sublet, the lessors permitted the removal, by the lessee, from their property of all limestone, stripping coal, fire clay, shale and flint clay on a royalty basis. However, in regard to these royalties, the lease pertinently provides: "[l]essee agrees to strip mine, quarry and remove from said leased premises all [the minerals noted above] *provided said items are marketable.*" (Emphasis added) The disagreement between the parties basically concerns the lessee's refusal to pay royalties on the minerals other than limestone since the sale of these minerals would not prove *profitable.*[1]

Specifically, the issue presented in the appeal is whether the Chancellor erred in construing the lease in light of parol evidence equating "marketable" with "profitable", thereby relieving the lessee of its royalty obligations since the sale of these additional minerals would prove unprofitable.

Addressing this precise issue, the lessors contend: (1) "marketable" is an unambiguous word of art not requiring the consideration of any parol evidence; (2) that allowing testimony of prior negotiations varies the terms of the lease in contravention of the parol evidence rule.[2]

---

[1] The Chancellor found as a fact, and the lessors do not dispute, that while these minerals are commercially usable, the transportation expenses of these minerals, necessitated by the already-filled needs of nearby industries, make their sale economically unfeasible.

[2] Whatever significance the lessors attach to this lease possibly being a sale of coal in place, *see, e.g., Walter Estate,* 437 Pa. 544, 265 A. 2d 368 (1970), clearly ignores both the realities of strip mining and the "marketable" clause.

While the parol evidence rule precludes, in the absence of fraud, accident or mistake, the admission of prior or contemporaneous agreements of the parties that alter, contradict or vary the terms of their writing, "it is well established that, where a written instrument is ambiguous, either party may produce oral evidence to resolve the ambiguity, such evidence being admitted, not to add to or detract from the writing, but merely to ascertain the meaning of the parties. The authorities so holding are legion. [Footnote of citations omitted]." *Morgan v. Phillips*, 385 Pa. 9, 14, 122 A. 2d 73, 76 (1956). *See, also, Lazarus v. Goodman*, 412 Pa. 442, 195 A. 2d 90 (1963); *Consolidated Tile & Slate Co. v. Fox*, 410 Pa. 336, 189 A. 2d 228 (1963). Thus, both of the lessors' contentions may be dismissed if "marketable" is an ambiguous term requiring interpretation.

In support of their argument that "marketable" has an unambiguous, precise legal meaning not conveying any notion of profitability, the lessors basically rely on *United States v. Cannelton*, 364 U.S. 76 (1960), and its progeny in the federal courts. However, a reading of *Cannelton* reveals that decision turns on federal tax policy for its definition of "commercially marketable." Hence, we deem that line of cases to be inapposite.

The Chancellor, reviewing the various definitions of "marketable," held the term to be sufficiently ambiguous to justify the admission of parol evidence. Indeed, the very definitional controversy (*i.e.*, "fit for sale" as opposed to "sale at a profit") between the parties discloses the ambiguous nature of "marketable." Furthermore, other jurisdictions have held that "marketable" includes the quality of being salable at a profit. *See, e.g., Leslie Co. v. Cosner Coal Co.*, 13 W. Va. 483, 48 S.E. 2d 332 (1948). In this regard we view the language of Justice DREW in *Laney v. Columbia Natural*

*Gas Co.,* 305 Pa. 527, 158 Atl. 266 (1931), involving the application of the parol evidence rule to an oil and gas lease to be pertinent: "[i]t seems to us that the phrase ['first minute pressure'] might well bear either the meaning ascribed to it by the plaintiffs or that ascribed to it by defendant, and that it is necessary to resort to extrinsic evidence to remove the doubt. This being true, evidence of the prior negotiations and contemporaneous understanding between the parties to the agreement was admissible to remove the ambiguity by showing which meaning was attached to it by them: [Citations omitted]." 305 Pa. at 534, 158 Atl. at 268. For these reasons we find no error in the Chancellor's ruling that "marketable" under the circumstances was so ambiguous to justify the admission of parol evidence to ascertain the intention of the parties.

### Number 260, March Term, 1970

In this appeal we are asked to review the Chancellor's finding of fact affirmed by the court en banc concerning the lessors' sixth cause of action. It was provided in the lease: "Lessee shall conduct all drilling operations at its own expense . . . and shall drill out the core of *all* minerals which are under the surface above the limestone and shall drill out the core of the limestone and shall drill through the limestone 75 feet beneath and shall drill out the core of the minerals which may be 75 feet beneath said limestone; Lessee shall provide Lessor with true copies of all descriptions of all tests made upon the lands of Lessor . . . and shall give the results of said tests and an analysis of tested minerals to Lessor." (Emphasis added) Despite this clear language, it was found by the Chancellor that, "The [lessee] had no substantial testing done of the minerals on the leased premises." Accordingly, payment for the substitutional drilling conducted by the Lessors was ordered.

This Court has stated: "[T]he findings of the Chancellor will not be reversed unless it appears that he has clearly abused his discretion or committed an error of law [citations omitted] and that the findings have the full force of a jury verdict and, if supported by sufficient evidence and if affirmed by the court en banc, will not be disturbed on appeal [citation omitted]. As we stated in Masciantonio Will, 392 Pa. 362, 367, 141 A. 2d 362 (1958), 'The test is not whether we, the appellate court, would have reached the same result had we been acting as the hearing judge who saw and heard the witness, "but rather whether a judicial mind, on due consideration of the evidence, as a whole, could reasonably have reached the conclusion of the chancellor." ' " *Yuhas v. Schmidt,* 434 Pa. 447, 453-54, 258 A. 2d 616, 619-20 (1969).

Since drilling tests were performed by the lessee, it appears, at first glance, that the Chancellor's finding is without any basis. However, a review of the test reports makes clear that these tests were limited to exploration for only limestone and not for all the royalty-producing minerals, as required by the lease. For this reason the Chancellor's finding is fully supported by the evidence and should not be disturbed.

Decree affirmed. Each party to pay own costs.

Mr. Chief Justice BELL would affirm in Appeal 260 and reverse in Appeal 252.

Mr. Justice COHEN took no part in the decision of this case.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.