**VICEROY FLUID POWER INTERNATIONAL, INC., successor to Viceroy Fluid Power, Division of Baxter Technologies, Plaintiff,**

v.

**BANKS ENGINEERING COMPANY, INC., Defendant.**

Civ. A. No. 86–2690.

United States District Court,
W.D. Pennsylvania.

March 8, 1988.

Jeffrey T. Morris, Plowman & Spiegal, Pittsburgh, Pa., for plaintiff.

Dennis J. Gounley, Gounley & O'Halloran, Greens Burg, Pa., for defendant.

## OPINION

GERALD J. WEBER, District Judge.

Plaintiff Viceroy has sued to recover the balance due for certain goods invoiced and delivered to defendant Banks. Banks in turn filed a counterclaim seeking to recover past due commissions and discounts under a distributorship agreement with Viceroy's corporate predecessor. Viceroy has now filed 2 motions in limine to preclude the introduction of certain evidence on the counterclaim and Banks has responded.

### A) Bulk Transfers Act

First of all, Viceroy contends that it cannot be liable on the counterclaim for the obligations of its corporate predecessor because through the auspices of a Canadian bankruptcy trustee, Viceroy purchased only the assets of the predecessor and none of its liabilities. Banks argues that such a transaction is in violation of the Bulk Transfer provisions of the Pennsylvania and Michigan Uniform Commercial Codes, 13 Pa.C.S.A. § 6101 et seq., Mich.Comp. Laws Ann. § 440.6101 et seq., which require prior notice to creditors. Banks claims it never received such notice and Viceroy's purchase cannot extinquish Banks' claim against the assets.

The salient question is whether the Pennsylvania or Michigan statutes are even applicable here. Viceroy is a Canadian corporation, as was its corporate predecessor. That predecessor either sought or was forced into the Canadian equivalent of bankruptcy proceedings. The sale of assets to Viceroy was made at the direction

of the Canadian Bankruptcy Trustee and approved by a Canadian court. On the other hand, Michigan has no apparent relevant relationship with this matter and Pennsylvania's only connection is that Banks is located here.

■ The Uniform Bulk Transfers Act, as incorporated in both Michigan and Pennsylvania versions of the UCC, applies to "all bulk transfers of goods located within this Commonwealth." 13 Pa.C.S.A. § 6102(d); Mich.Comp.Laws Ann. § 440.6102(d). There has been no allegation that the assets transferred to Viceroy were wholly, predominantly, or even partly within either Michigan or Pennsylvania. Furthermore, Ontario has its own Bulk Transfers Act.[1] Choice of law principles and international comity would dictate that the Canadian statute apply to the sale of assets of one Canadian corporation to another Canadian corporation under the auspices of a Canadian bankruptcy trustee.

Even if we assume that either the Pennsylvania or Michigan Act applies, the sale in issue falls within a statutory exception:

■ The following transfers are not subject to this division:

(4) Sales by executors, administrators, receivers, *trustees in bankruptcy*, or any public officer under judicial process.

13 Pa.C.S.A. § 6103 (emphasis supplied). Banks argues, without support, that we should not recognize the acts of the Canadian trustee. We reject this argument and conclude that the sale in issue falls squarely within the above-quoted exception.

For the reasons stated we conclude that the Uniform Bulk Transfers Acts of Pennsylvania and Michigan do not apply to the transfer at issue. Consequently, Banks may not present evidence of any claim for past due commissions, discounts or other benefits which predate October 3, 1985, the date when Viceroy purchased the assets of its predecessor.

## B) Parol Evidence

After purchasing the predecessor's assets, Viceroy continued to employ Banks as a distributor pursuant to the distributorship agreement between Banks and Viceroy's predecessor. Banks now claims that it was the *exclusive* distributor within its specified region and is due commissions from Viceroy for sales in Banks' territory made directly by Viceroy or by other distributors. Banks also claims that it was entitled to sell outside its specified territory and is due commissions from Viceroy for those sales.

On the other hand, Viceroy contends that the agreement extends no exclusive rights and Banks may not present parol evidence to the contrary. Viceroy takes the same position on the defined sales territory, seeking to prevent testimony that Banks' sales territory was more expansive than that specified in the agreement.

■ Generally, parol evidence may not be admitted to vary or alter the forms of a written agreement, particularly where the writing includes a clause prohibiting oral modifications. *C.I.T. Corporation v. Jonnet*, 419 Pa. 435, 214 A.2d 620 (1965). However, parol evidence is admissible where the contract is ambiguous *Pavlick v. Ambrosia Coal & Construction Co.*, 441 Pa. 210, 273 A.2d 343 (1971).

■ The agreement on its face does not state whether the distributorship is exclusive or not. The agreement grants "sales rights" to a specified territory but fails to state the nature and extent of those rights as against other distributors in that territory. To this extent the agreement is ambiguous and parol evidence may be presented on this issue.

■ The agreement is also ambiguous in its definition of Banks' sales territory. The agreement states that Banks may sell Viceroy products "primarily in the territory as defined." This would seem to indicate that Banks is not strictly limited to the defined

---

**1.** Banks has not alleged any violation of the Ontario Act.

territory. Such an ambiguity may be addressed in testimony at trial.

■ We reject Viceroy's argument that the word "primarily" in the agreement implies that the distributorship was non-exclusive. To the contrary the word taken in context appears to qualify the definition of the sales territory, not the extent of the sales rights within it:

> Distributor accepts appointment for sales of said products primarily in the territory as defined by Schedule "B".

> The distributor is hereby granted sales rights of seller's products outlined in Schedule "A" primarily in the territory as listed hereon.

The agreement being ambiguous as to exclusivity and scope of territory, parol evidence is admissible at trial on these two issues.

An appropriate order will follow.

### ORDER

AND NOW, in accord with the accompanying Opinion, it is hereby ORDERED:

1) Viceroy's Motion in Limine as to claims for commissions or discounts prior to October 3, 1985 is GRANTED.

2) Viceroy's Motion in Limine as to parol evidence is DENIED. The parties may introduce parol evidence on the issues of exclusivity of sales rights and scope of sales territory.

3) Jury selection will begin on *Monday, May 2, 1988 at 1:30 P.M.* with trial to begin immediately thereafter.