PROJECT DEVELOPMENT GROUP,
INC., Plaintiff,

v.

O.H. MATERIALS CORP., Defendant.

Civ. A. No. 88–2089.

United States District Court,
W.D. Pennsylvania.

May 2, 1991.

Ralph Finizio, Pittsburgh, Pa., for plaintiff.

E. Joel Wesp, Columbus, Ohio, Gary J. Gushard, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

LEE, District Judge.

This case is before the Court on a Motion for Summary Judgment by defendant, O.H. Materials Corp., (OHM), which contends that all claims asserted by plaintiff, Project Development Group, Inc. (PDG) are devoid of material issues of fact and should be decided in favor of OHM as a matter of law.

### FACTS

In 1987, the Olin Chemical Corp. (Olin) decided to demolish its unused chemical facility in Moundsville, West Virginia. Environmental regulations required that the residue of hazardous chemicals and the asbestos and other insulating materials in the plant be removed and transported for disposal before the demolition could be done.

OHM was one of the contractors on Olin's list of those approved to submit bids for the decontamination and insulation removal at the Moundsville plant. OHM submitted a joint proposal with an insulation contractor known as Biscraft/Brand (Brand) to Olin during the first round of bidding. Olin advised OHM that the insulation bid submitted by Brand was high.

After the first round of bids, Olin decided to entertain lump sum bids favoring a single contractor for both phases of the project. OHM contends that the delay resulting from Olin's decision to rebid afforded it the opportunity to do its own estimates on the insulation phase of the project. Though OHM considered bidding the entire project itself, it decided to solicit bids from two other insulation contractors, Ameral–Neumayer (Ameral) and PDG.

In March of 1988, OHM's representatives twice met with PDG's Vice President, David D'Appolonia (D'Appolonia). At the first meeting, on March 2, D'Appolonia expressed an interest in submitting a bid to OHM, but claimed it would do so only if OHM agreed to use PDG on an exclusive basis if OHM was awarded the Olin contract. OHM contends that their representatives told D'Appolonia there would be no exclusive contract, but PDG could submit a bid as any subcontractor would.

At the second meeting on March 10, D'Appolonia met with Steve Smith (Smith), OHM's Midwest Region Manager, and Doug Marquart (Marquart), a Project Development Coordinator with OHM. OHM contends that Smith and Marquart reiterated that there would be no exclusive agreement with PDG. At that time, Smith allegedly informed D'Appolonia that OHM had estimated the project itself, and was considering submitting its own bid to self-perform the insulation removal phase of the project. PDG was allegedly informed that it could submit a bid for consideration as any other subcontractor.

PDG contends that D'Appolonia informed Smith and Marquart that if, after they've heard from Ameral, they were interested in receiving PDG's proposal, OHM should contact D'Appolonia because PDG's price and proposal would only be given under an exclusive arrangement. On Fri-

day, March 11, 1988, Marquart allegedly called D'Appolonia and said that OHM had not heard from Ameral and therefore was going to use PDG. D'Appolonia contends that he believed that Marquart was authorized to make the call and obtain PDG's proposal. On that basis, D'Appolonia delivered a written bid proposal to OHM on Saturday, March 12, 1988. PDG's proposal did not, however, include the price. D'Appolonia had advised Marquart that he would wait until Monday to supply such price, in case OHM heard from Ameral at the last minute.

On Monday, March 14, 1988, D'Appolonia again spoke with Marquart, and Marquart allegedly informed him that OHM had not heard from Ameral. PDG alleges that D'Appolonia was then told that PDG's bid would be in OHM's proposal. Following this telephone conversation, D'Appolonia telecopied PDG's prices to OHM.

After OHM received and evaluated the various bid proposals, OHM submitted its own lump sum bid on the decontamination and asbestos removal phase of the project to Olin without any references to any subcontractor. OHM contends that it utilized public governmental regulations, as well as portions of PDG's asbestos removal procedures[1] as part of its bid package. In June of 1988, Olin awarded the lump-sum contract to OHM. OHM self-performed both phases of the project utilizing its own work force, and without the use of any subcontractor.

In August of 1988, PDG learned that OHM had secured the contract from Olin and had begun self performing the asbestos/insulation removal. PDG immediately contacted OHM, demanding that it honor its agreement with PDG. OHM denied the existence of any agreement, and PDG filed suit for breach of contract.

During discovery of the breach of contract action, PDG learned that OHM had copied portions of PDG's bid proposal verbatim and had submitted it to Olin as its own work. PDG alleges that the bid submitted by OHM as its own, was essentially a "cut and paste" product derived from PDG's proposal. PDG further contends that OHM copied verbatim from PDG's written technical approach and appropriated other trade secrets and proprietary information which PDG had shared with OHM on a confidential basis.

PDG then brought an additional action against OHM for copyright infringement, misappropriation of trade secrets, conversion, and unjust enrichment. The two cases before the Court[2] were consolidated, discovery was completed, and the summary judgment motion filed pursuant to Rule 56(c) of the Federal Rules of Civil Procedure[3] is ready for disposition.

In interpreting Rule 56(c), the United States Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) has ruled that:

"The plain language ... mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–323, 106 S.Ct. at 2552.

An issue of material fact is "genuine" only if the evidence is such that a reason-

---

**1.** OHM contends that PDG's asbestos procedures consisted of boilerplate language which was either verbatim or paraphrased versions of the federal regulations.

**2.** *Project Development Group, Inc. v. O.H. Materials Corp.*, Civ. Action No. 88–2089; *Project Development Group, Inc. v. O.H. Materials Corp.*, Civ. Action No. 89–2118.

**3.** Fed.R.Civ.P. 56(c), in pertinent part, reads as follows:

"[Summary judgment] shall be rendered forthwith if the pleadings, depositions, Answers to Interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

able jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Incorporated,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of identifying for the Court those portions of the record which it believes demonstrate the absence of a material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. To overcome the movant's assertion that there is no material issue of fact, the opposing party must point to specific evidence. *Williams v. Borough of West Chester,* 891 F.2d 458, 463–64 (3d Cir.1989).

### BREACH OF CONTRACT

In its Motion for Summary Judgment, OHM contends that no oral contract was formed, PDG's bid proposal was merely an offer which was not accepted, and that the Statute of Frauds bars PDG's contract claim.

■ The essential requirements to the formation of a contract are an offer, acceptance and a manifestation of assent, or a "meeting of the minds." At every meeting prior to Marquart's call to D'Appolonia on March 11, 1988, D'Appolonia was consistent with his insistence on an exclusive arrangement with OHM before he would submit a bid on behalf of PDG. In essence, PDG was willing to provide a bid proposal on the insulation removal phase of the Olin project, if OHM promised to use PDG exclusively if OHM was awarded the general contract on the project. This was PDG's offer.

■ Knowing the conditions upon which PDG would provide a bid, OHM's representative called D'Appolonia and informed him that OHM wanted "to use PDG" in its bid. Whether such statement by OHM was an intent to accept PDG's offer is not for the court to decide. Under Pennsylvania law, when the record contains conflicting evidence regarding intent, the question of whether parties formed a completed contract is one for the trier of fact. *Channel*

*Home Centers, Division of Grace Retail Corp. v. Grossman,* 795 F.2d 291 (3d Cir. 1986).

It is undisputed, that a subcontractor's bid to a contractor, is merely an offer to contract. PDG, however, is claiming the existence of an oral contract, prior to the submission of PDG's bid proposal. The actual contract to do the removal of the insulation is secondary to the oral contract to become an exclusive bidder. In essence, if there was an acceptance of PDG's offer, it was an oral contact to enter into a contract should the condition of Olin's acceptance of OHM's bid be met.

■ This being the case, OHM's argument, that the disallowance of the introduction of parol evidence would make PDG's contract claim fail as a matter of law, is invalid. The writings of March 12th and March 14th are separate and distinct from the alleged oral contract for exclusivity. The writings were part and parcel of the actual contract for the removal of the insulation. The oral manifestations of contract were with relation to exclusive bidding rights. Parol evidence only affects writings, and therefore the parol evidence rule has no application to the evidence of an oral contract.

■ Though parol evidence may not be admitted to vary or alter the forms of a written contact, it can be admissible where the written contract is ambiguous. *Viceroy Fluid Power Intern, Inc. v. Banks Engineering Co., Inc.,* 680 F.Supp. 725 (W.D.Pa.1988). The oral evidence as to the exclusivity agreement does not vary the terms of PDG's written bid proposal. Whether PDG's written bid proposal can be deemed a contract, collateral or otherwise, is a factual issue.

■ OHM also contends that the alleged oral exclusive contract on the Olin project could not be fully performed within the span of one (1) year from the making thereof, and was, therefore, invalid under the statute of frauds.[4] Whether there was

---

**4.** OHM claims that the result would be the same whether the Court applies the Ohio statute of frauds, Section 1335.01, Ohio Revised Code, or

the Pennsylvania statute of frauds, 33 P.S. §§ 1–8. We disagree that the Pennsylvania statute of frauds addresses the issue regarding the

a possibility that the alleged oral contract could, in fact, be performed within one (1) year is, in and of itself, a question of fact to be determined by the jury.[5]

■■■ With regard to PDG's claim for damages in the form of profits it would have realized but for OHM's breach, under Pennsylvania law, lost income or profit damages are recoverable where they can be proved with reasonable certainty. *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243, 1261 (1983). OHM's claim that PDG is limited to its bid preparation costs is without merit.

For the aforesaid reasons, OHM's Motion for Summary Judgment on PDG's breach of contract claim shall be denied.

## COPYRIGHT INFRINGEMENT

OHM has moved for summary judgment on PDG's claim of copyright infringement. OHM claims that PDG is not entitled to copyright protection for its bid proposal because: (1) PDG's work was not original; (2) the doctrine of merger of idea and expression applies; (3) the work had been previously published; (4) damages are incalculable; and (5) because of the doctrine of unclean hands.

The bid proposal, of which PDG seeks copyright protection, consists of: a transmittal letter; a proposal produced on Olin's form; a cost schedule containing PDG's prices; insulation and manhour quantity estimates; technical proposal; qualification and reference information; insurance information; PDG's standard procedure for handling of asbestos and asbestos contaminated materials; PDG respirator program for asbestos abatement; and PDG's price sheet. (See Appendix 23 & 24 to OHM's Brief in Support of Summary Judgment).

PDG's bid proposal is made up of a series of facts, procedures, and methods or processes.

■■■ It is fundamental in the law of copyright that "no author may copyright his ideas or the facts that he narrates." *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 556, 105 S.Ct. 2218, 2228, 85 L.Ed.2d 588 (1985). The source of Congress' power to enact copyright laws is Article I, § 8, cl. 8, of the Constitution, which authorizes Congress to "secure for limited times to authors ... the exclusive right to their respective writings." [6] Originality is therefore a constitutional requirement. Because facts do not owe their origin to an act of authorship, no one may claim originality as to facts. *Feist Publications v. Rural Telephone Service,* —— U.S. ——, 111 S.Ct. 1282, 1288, 113 L.Ed.2d 358 (1991).

■■■ A compilation of facts may possess the requisite originality, however, if the author chooses which facts to include, in what order to place them, and how to arrange such facts. As long as the selection and arrangement are made independently by the compiler and entail a minimal degree of creativity, Congress may protect such compilations through the copyright laws. *See Feist Publications v. Rural Telephone Service,* 111 S.Ct. at 1289.

■■■ By PDG's own admission, the actions of OHM constituting their use of PDG's bid proposal are the use of PDG's: (i) estimates as to scope of work; (ii) contract price; (iii) proposed methodology and process; (iv) quantities; (v) safety procedures; and (vi) technical approach. (PDG's Answers to Interrogatories, Appendix 22, OHM's Brief in Support of Summary Judg-

---

necessity of a written manifestation of contracts not performable within one year from the entry of such contract. There appears then to be a conflict between the laws of Ohio and Pennsylvania. Because this is a motion for summary judgment, we need only address such issue at this time if it must be decided as a matter of law. We find that not to be the case.

5. OHM also contends that the statute of frauds contained in the Uniform Commercial Code, UCC § 2–201(A), bars recovery by PDG. The

Uniform Commercial Code, which is the same in both Ohio and Pennsylvania, applies only to the sale of goods, and therefore is inapplicable to the case at bar.

6. 17 U.S.C. § 102(a) in pertinent part reads as follows:

"Copyright protection subsists ... in original works of authorship fixed in any tangible medium of expression ..."

ment). Estimates of scope of work, price and quantities are all factual. In order for PDG to be entitled to copyright protection in the facts, it must show that there is a modicum of originality in the selection and arrangement of such facts. We find that PDG has not done that.

The bulk of such facts are set forth on forms which were provided by Olin to all those wishing to bid on the project. There is no originality, therefore, in the arrangement of such facts. As far as the selection of such facts, everyone was bidding the same job. By his own admission, D'Appolonia states that it is common "in the construction industry to bid the highest price which a contractor believes could win the job. There is no necessary relationship between the estimated cost and the bid price." (See Appendix 12 to PDG's Brief in Opposition to Motion for Summary Judgment). There is also evidence in the record that PDG had access to bid prices that were submitted to Olin during the first round of bidding. The quantities estimated and prices selected, by nature of the estimate and bid process, do not possess the requisite originality under the copyright laws.

■■■ The remaining portions of PDG's bid proposal that were allegedly appropriated by OHM are the Standard Operating Procedure (SOP) and the Respirator Program. The SOP was the result of compiling and arranging asbestos industry procedures and government regulations. The Respirator Program was likewise developed from the regulations, but the respirator requirements also describe how such requirements were to be administered by PDG. (See Regan Dep. pp. 111–112, 115, Appendix 3, PDG's Brief in Opposition to Motion for Summary Judgment).

Section 102(b) of Title 17, United States Code, provides:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b). Protection is extended to an expression of an idea in a tangible form, but not to the idea itself, regardless of the form in which it is fixed. *Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458, 1463 (5th Cir.1990). In drawing this distinction, Congress balanced the competing concerns of providing incentive to authors to create and of fostering competition in such creativity. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1253 (3rd Cir.1983).

The doctrine of merger has grown out of the efforts of courts to apply Section 102(b) and draw the line between an idea and its expression. When the expression of an idea is inseparable from the idea itself, the expression and idea merge. *See Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d at 1463. If the particular expression and the idea are inseparable, protecting the expression would confer a monopoly on the idea upon the copyright owner free of the conditions and limitations imposed by the patent law. *See Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir.1971).

PDG's expression of its SOP and Respirator Program is one of a limited number of possible ways, in view of the substantial federal regulations in this area, that such procedures can be stated. Under the doctrine of merger and the express language of 17 U.S.C. § 102(b), such expressions by PDG are not subject to protection.

Accordingly, OHM's Motion for Summary Judgment on PDG's claim of copyright infringement shall be granted.

## CONVERSION

PDG contends that OHM was authorized to use PDG's bid proposal only in the event that OHM used PDG to perform the asbestos removal portion of the Olin project, if the contract for such project was awarded to OHM. Because OHM was awarded the contract, but failed to employ PDG to perform the asbestos removal, PDG alleges that OHM intentionally exercised dominion and control over PDG's property inconsistent with PDG's possessory rights in the bid

proposal and beyond the authorization given by PDG.

■ Under Pennsylvania law, conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification. *Shonberger v. Oswell,* 365 Pa.Super 481, 530 A.2d 112 (1987). Conversion can *only* result from an act intended to affect chattel, and, an intent to exercise dominion or control over goods which is inconsistent with the owner's rights is sufficient. *Id.* (Emphasis added).

■ The property of which PDG claims was subject to conversion by OHM is the actual bid proposal submitted to OHM. (See PDG's Amended Complaint). This Court is unable to find an interference with PDG's possessory rights in the bid proposal. The proposal was solicited and voluntarily submitted to OHM. Though there is evidence that certain portions of PDG's bid were also contained in, or made a part of, OHM's bid proposal to Olin, such does not rise to a level of dominion or control necessary for PDG to maintain an action in conversion. OHM's Motion for Summary Judgment shall therefore be granted.

## MISAPPROPRIATION OF TRADE SECRETS

PDG also contends that its bid proposal given to OHM was a compilation of trade secrets and proprietary information, which was misappropriated by OHM for use in its own bid. The threshold issue in a trade secret misappropriation case is whether a trade secret in fact exists. *Reinforced Molding Corp. v. General Electric Co.,* 592 F.Supp. 1083 (W.D.Pa.1984).

■ The Supreme Court of Pennsylvania has defined a trade secret as "any formula, pattern, device or compilation of information which is used in one's business, and gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Felmlee v. Lockett,* 466 Pa. 1, 9, 351 A.2d 273, 277 (1976). In order for PDG to claim such protection of trade secrets, the secrets must be those of PDG, and not general secrets of the trade in

which PDG is engaged. If such alleged secrets are public knowledge, or general knowledge of the industry, they will not be construed as trade secrets.

■ Though there is evidence in the record that PDG's asbestos abatement procedures were merely paraphrased versions of the federal regulation and/or procedures readily available in the industry, this Court will refrain from making such a finding as a matter of law. The question of whether proprietary information constitutes a trade secret is an issue of fact, ordinarily resolved by the fact finder after a full presentation of the evidence. *Continental Data Systems, Inc. v. Exxon Corp.,* 638 F.Supp. 432, 441 (E.D.Pa.1986). Because it has been held that pricing and estimating tactics and formulations deserve trade secret protection, *S.I. Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1260 (3d Cir.1985), summary judgment on such issue must be denied.

## UNJUST ENRICHMENT

Should PDG's cause of action for breach of contract be found to be without merit, PDG alternatively seeks equitable restitution relief in the form of a claim of unjust enrichment. PDG contends that OHM was awarded the contract from Olin based on the use of PDG's work product, and at the expense of PDG. PDG seeks restitution in the form of damages and expenses incurred, including damages in the amount of OHM's profits unjustly derived, as well as punitive damages.

OHM claims that PDG is not entitled to equitable relief on grounds they were acting with "unclean hands," in that PDG was less than forthright in its dealings with OHM and in fact had surreptitiously copied OHM's bid prices and used them as their own. OHM further contends that PDG's bid proposal conferred absolutely no benefit upon OHM.

■ OHM requests this Court to disregard PDG's unjust enrichment claim due to a pattern of fraud and illegal conduct during their bid negotiations with OHM. The question of whether PDG was acting

with unclean hands is a question of fact. Based on the current state of the record there are material issues of fact with regard to PDG's actions that prevent an adjudication at this stage of the litigation.

Similarly, whether there was an enrichment or benefit conferred on OHM by PDG, and whether an injustice would exist should the benefit be retained without compensation to PDG, are factual issues not subject to summary judgment. Though OHM relies upon numerous affidavits and deposition testimony to show PDG's bid proposal conferred no benefit upon it, they are contradicted by the deposition testimony of OHM's own Project Manager on the Olin project. Such contradiction raises a material issue of fact requiring the denial of OHM's request for summary judgment.

An appropriate Order follows.

### ORDER OF COURT

AND NOW, this 1st day of May, 1991, upon consideration of defendant's Motion for Summary Judgment and plaintiff's response thereto, it is hereby

ORDERED, that defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part as follows:

(1) Summary Judgment on plaintiff's cause of action for breach of contract is DENIED;

(2) Summary Judgment on plaintiff's cause of action for copyright infringement is GRANTED;

(3) Summary Judgment on plaintiff's cause of action for conversion is GRANTED;

(4) Summary Judgment on plaintiff's cause of action for misappropriation of trade secrets is DENIED; and

(5) Summary Judgment on plaintiff's cause of action for unjust enrichment is DENIED.