Heat and Power Corporation *v.* Foust Distilling Company, Appellant.

Argued May 26, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Arthur Markowitz,* with him *Markowitz, Liverant, Boyle & Rahauser,* for appellant.

*William H. Kain,* with him *Kain, Kain & Kain,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 28, 1954:

The Heat and Power Corporation, plaintiff in this case, entered into a contract with the Foust Distilling Company, the defendant, for a "New Boiler Installation" at the Glen Rock Distillery of the defendant company. In a letter from the plaintiff to the defendant dated December 21, 1945, the plaintiff outlined what it would supply and install. In a letter from the defendant to the plaintiff dated August 27, 1946, the defendant stated what it would accept. The plaintiff company began its installation work on January 15, 1947 but on April 30, 1947, it was ordered by the defendant to desist, the defendant complaining that defective equipment was being installed.

The plaintiff thereupon sued the defendant for breach of contract and the defendant counterclaimed against the plaintiff for breach of warranty. The plaintiff recovered a verdict of $39,471.08. The defendant failed in its counterclaim and moved for judgment n.o.v. and a new trial on the plaintiff's claim, and for a new trial on its counterclaim. The lower court affirmed the verdicts and entered judgments thereon. The defendant appealed.

Although many matters were involved in the lawsuit, only one is the subject of contention in this appeal, namely, item No. 6 of the offer and acceptance.

In the letter of December 21, 1945, the plaintiff offered:

"6. For the installation of 2 Westinghouse Single Retort Stokers with necessary equipment and damper control, we ask the sum of Eight Thousand, Five Hundred Dollars— $8,500.00

The Foust Distilling Company—No. 3

December 21, 1945

ALTERNATE: For the Flynn & Emrich Stokers on the B. & W. Boilers, we ask the sum of Nine Thousand, Five Hundred Dollars— 9,500.00

For the Detroit Double Retort Stokers, we ask the sum of Ten Thousand, Eight Hundred Dollars—

10,800.00

It will be noted that Flynn & Emrich do not meet the guarantee requirements, and the Detroit Stoker is not adaptable to boilers of the required type and size."

In its acceptance of August 27, 1946, the defendant referred sketchily to item 6: "Stoker Installation—With Escalator Clause 8,500.00"

Whatever grief the defendant company has come to on account of this business transaction can be traced to this scantily-described item—"stoker installation." No language dressed its purpose, no words gave the clothing of its identity, no phrase established its intention. What stoker installation did the defendant accept? The plaintiff had offered three distinctly different types of stoker, and the defendant laconically replied: "We will take a stoker installation." It was inevitable then, when difficulties arose between the contracting parties, that some evidence was needed to show what it was that the defendant had accepted. When this followed, the defendant complained that such evidence offended against the rule that in the absence of fraud, accident or mistake, no

parol evidence is admissible to alter the terms of a written contract. But the law does not simply stand by helplessly when the parties fail to express their full intentions in written contracts. Two substantial business organizations do not enter into an agreement involving thousands of dollars without a meeting of the minds. If the terms of that meeting are not clearly expressed in the formal contract, then the ambiguity must be resolved by introduction of other evidence.

On April 8, 1946, the president of the plaintiff company, John H. Zink, wrote to the president of the defendant company, Louis Mann, saying: "We are placing the order for the stokers with Flynn & Emrich, Baltimore, Md., because after talking with Westinghouse on the phone this morning, I do not think it is possible for them to make delivery in time."

On the same day Zink again wrote Mann: "We have this day placed our order with the Flynn and Emrich Company for one (1) of their Stokers at Westminster and two (2) at Glenn Rock, in accordance with their original proposal dated November 26, 1945 and covered by our orders H-5572 and H-5573...

"We agree with you that because of strike and other conditions at the Westinghouse Plant, that they can not possibly make delivery of the stokers, and the Flynn and Emrich Stokers are ordered on your instructions because of the advantages of their being a local concern, and that the average 150% rating will meet your requirements..."

When the stokers arrived the defendant complained that the plaintiff had failed to live up to its express and implied warranty that "steam pressure of one hundred fifty (150) pounds would be delivered by the equipment furnished" so that the Foust Distilling Company "could operate its distilling equipment, cookers, mash tubs, yeast tubs and all other compon-

ents of physical equipment requiring the use of steam." Further, that the equipment supplied by the plaintiff "did not and could not maintain a uniform and constant pressure of one hundred fifty (150) pounds." Also that the stoker operation was supposed to be automatic, but, on the contrary, five men were required to fire the stoker and make it work.

The plaintiff denied these assertions and stated that the Heat and Power Corporation had agreed to install equipment that would supply "The steam necessary for a mash-drying installation engineered by H. K. Ferguson Company which would require merely 8,600 pounds of steam per hour." Further, that "the equipment being installed would have fully met all requirements," if the defendant company had not ordered a cessation of all operations.

In this duel of charges and counter-charges, it was imperative that parol evidence be introduced to establish just what the plaintiff and defendant did agree to. Without the parol evidence which the lower court properly permitted the trial would have been a battle fought in a fog of doubt and mists of uncertainty.

The defendant company maintained that the "stoker installations" mentioned in its acceptance of August 27, 1946, meant Westinghouse stokers. The plaintiff company insisted that because of what had transpired between December 21, 1945 (the date of the original offer) and August 27, 1946, "stoker installations" meant Flynn & Emrich stokers. Only parol evidence could clear away the clouds of doubt so that the jury could intelligently meet the issue they were to decide.

The situation presented by this litigation is not novel in the law. In the case of *Fischer v. Anderson,* 173 Pa. Superior Ct. 175, decided only last year, the defendant agreed by written contract to provide "Fin

Floor" and "Sub Flr" in the house he was building for the plaintiff. The contract did not specify what type of flooring. At the trial the plaintiff introduced a letter written by the clerk of a bank involved in the transaction. The letter said that Mr. Anderson, the defendant, "has agreed to sign a contract which is to include the pine floor. ." The defendant objected that this letter would be evidence to vary the terms of a written contract. The Superior Court, speaking through Judge Ross, pointed out: "The purpose of admitting it [the letter] was not to contradict, alter or add to the terms of the written agreement but rather to explain what the parties understood one ambiguous term to mean. It is well settled that where the language of a contract, or any part of it, is ambiguous, either party may produce oral evidence to explain the meaning of the contract and to resolve the ambiguity. Waldman v. Shoemaker, 367 Pa. 587, 80 A. 2d 776. Consequently we conclude that the Stoehr letter was admissible to prove the type of flooring that was to be used by the defendant in the construction of the house."

In the case of *Schwartz v. Whelan*, 295 Pa. 425, the question arose as to how much plastering was to be done by the plaintiff since the written agreement between the parties did not go into any particulars on this feature of the construction job. The plaintiff introduced parol evidence to show the area of plastering intended by both parties. This Court, in affirming the verdict in the court below, said: "The contract being confessedly ambiguous on the point, and there being no writing or plan to make it certain, both parties had the right to produce parol evidence to resolve the ambiguity."

As recently as November 9, 1953, in the case of *Lipsie v. Dickey*, 375 Pa. 230, 234, we were called upon

to decide whether the lower court had properly interpreted the phrase, "where located," in the written contract there involved. Speaking of the construction adopted in the lower court, Mr. Chief Justice STERN said: "While that *may* be a proper construction, it is certainly not *the only possible one;* on the contrary, the phraseology is far from clear . . . Be that as it may, the best that can be said of the words in question is that they are ambiguous, and therefore there is applicable the well-established principle that where there is doubt or ambiguity as to the meaning of the covenants in a contract or the terms of a grant they should receive a construction that will accord with the intention of the parties, and that, in order to ascertain that intention, there must be taken into consideration the surrounding circumstances, the situation of the parties, the objects they apparently had in view, and the nature of the subject-matter."

It would indeed be supererogatory to give further illustrations of a principle so well imbedded in the law. Aside from precedents, the most fundamental logic requires, when parties to a contract write important conditions in disappearing ink, that the court allow the use of such evidentiary restorer as is available to revive to legibility and enforceability the true intent of the parties.

We have considered all the other reasons advanced by counsel for the defendant company for judgment n.o.v. and for a new trial: that there was a variance between the allegata and the probata; that the court erred in refusing to grant a continuance after the plaintiff had introduced the letters herein referred to; and that the verdicts were against the weight of the evidence. We are not convinced that the lower court erred in the disposition of any of these matters. The issues were well stated in the pleadings, the cause was

well tried by able lawyers, and the issues of fact were properly submitted to a jury which returned verdicts, with which, considering the entire record, we find no fault.

Judgments affirmed.