Lazarus *v.* Goodman, Appellant.

 

Argued September 30, 1963. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Thomas Lewis Jones,* with him *White and Jones,* for appellant.

*Richard S. Crone,* with him *Crone & Cohen,* for appellee.

OPINION BY MR. JUSTICE EAGEN, November 12, 1963:

This is an action of assumpsit for breach of a written contract of employment between a partnership, known as Harris and Hirsch Agency, and the plaintiff, Norman Lazarus.

The defendants, Harris and Hirsch, admittedly executed the contract, and were partners in the agency. However, they denied any breach of the contract. The defendant, Goodman, denied being a partner, or having any connection with the company.

At trial, the jury returned a verdict in favor of the plaintiff and against all three defendants. Motions for a new trial and judgment notwithstanding the verdict were overruled. Goodman, alone, appeals from the judgment entered upon the verdict.

The complaint and cause of action against Goodman was based upon the allegations that he was a silent partner in the agency, or at least that the plaintiff was led to believe that this was so, and was induced into entering the contract of employment by statements of Goodman to that effect. In other words, that Goodman was estopped from denying that he was a partner in the company as far as the plaintiff, Lazarus, was concerned.

From the evidence, the jury could have found the following facts:

Lazarus, assistant manager of a Pittsburgh health and accident insurance agency, hired Harris and Hirsch to work for that company. Subsequently, Harris and Hirsch resigned these positions and organized their own agency. They were aided and advised in this project by Goodman, the father-in-law of Hirsch. It was Goodman who contacted the home office of a national company to negotiate a contract on behalf of the new agency.

Subsequently, Harris and Hirsch approached Lazarus and asked him to work for the new agency. These parties had many conferences, but no decisions could be reached until Goodman was consulted. Finally, Lazarus was invited to confer with Goodman. A meeting was arranged in late April or early May of 1958, with the plaintiff and all three defendants present. Lazarus was offered the position of manager of the agency's office in Virginia at a salary of $250 per week, and expenses up to $35 per week, and one-third of the profits. Goodman took an active part in the discussions. When Lazarus expressed concern over the financial responsibility of the agency, Goodman said that he was a silent partner and backing the company one hundred per cent. Following this, Lazarus agreed to take the position.

Two or three weeks later, an attorney, who had represented Goodman for several years, reduced the agreement to writing. It was executed by the plaintiff, by Harris and by Hirsch, on May 16, 1958. Goodman did not sign the contract, nor was he mentioned therein.

Lazarus accepted the new position, resigned from his old job, and moved his family to Virginia, as a result of Goodman's assurance that he was a partner in the company.

Under these facts, it is clear that the question of Goodman's status in the company, as far as the plaintiff was concerned, was for the jury. If they are true, we have: (1) A representation by Goodman that he was a partner; (2) A reliance upon that representation by Lazarus; (3) A change in position by Lazarus in reliance upon Goodman's representation. These are the essentials of a partnership by estoppel.

The Uniform Partnership Act of March 26, 1915, P. L. 18, §16, 59 P.S. §38, states that: "(1) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership . . ., he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership; . . . .

"(a) When a partnership liability results, he is liable as though he were an actual member of the partnership."

In discussing partnership by estoppel, Rowley on Partnership, Vol. 1, §16.1, at 424 (2d ed. 1960) states: "One may have partnership obligations imposed upon himself by estoppel. This occurs when one holds himself out, or knowingly permits himself to be held out, as a partner in a particular firm. He is thereby rendered liable upon contracts made by his apparent partners for the firm to third persons who knew of and

acted in reliance upon such representations, or holding out. Estoppel is based upon the principle that if a man holds himself out, either actively or passively, or permits himself to be held out as a member of a partnership, and so induces third parties to deal with the firm and extend credit upon the belief that the party estopped was a member thereof, and upon credit of this party, when otherwise they would not have so dealt, he should not then be allowed to deny his apparent connection with the partnership, and so escape liability, . . . . [T]he parties are liable to one induced thereby to give credit, the ground of such liability not being under direct representations between the parties, but upon the principles of general policy to prevent fraud."

The theory of partnership by estoppel was applied in Pennsylvania as early as 1902, in the case of *Daniel v. Lance*, 21 Pa. Superior Ct. 474 (1902) ; See also, *Oswald Mach. Co. v. Farnsworth and Ebert*, 101 Pa. Superior Ct. 506 (1931) ; *Bing v. Schmitt*, 226 Pa. 622, 75 Atl. 854 (1910) ; *Daroff & Sons, Inc. v. Vitullo*, 350 Pa. 501, 39 A. 2d 595 (1944).

We have repeatedly held that if a case is supported by sufficient competent oral testimony the issue is for the jury, no matter how strong may be countervailing oral testimony: *Smail v. Penowa Coal Sales Co.*, 170 Pa. Superior Ct. 312, 85 A. 2d 660 (1952) ; *Zimmerman v. Penna. Railroad Co.*, 302 Pa. 406, 153 Atl. 721 (1931) ; *Kosco v. Hachmeister, Inc.*, 396 Pa. 288, 152 A. 2d 673 (1959) ; *Shearer v. Ins. Co. of No. America*, 397 Pa. 566, 156 A. 2d 182 (1959).

The motion for judgment in favor of Goodman notwithstanding the verdict was, therefore, properly overruled.

In support of the motion for a new trial, the appellant urges that the trial court erred: (1) in ruling that a certain provision in the contract was ambiguous and

permitting the jury to interpret it; (2) in not granting a new trial because of after-discovered evidence.

The particular clause in the contract dealt with the minimum time within which the agency had the right to terminate Lazarus' contract without cause. The trial judge permitted the introduction of oral testimony to indicate the intention of the parties and then submitted the question to the jury for its determination.

We are satisfied from our study of the contract and the record, that the trial judge acted properly. The controversial provision was far from being clear and unambiguous. Under such circumstances, each side had the right to support its interpretation by parol testimony and it was for the jury to finally resolve the true intention of the parties: *Lipsie v. Dickey,* 375 Pa. 230, 100 A. 2d 370 (1953); *Heat & Power Corp. v. Foust Dist. Co.,* 378 Pa. 133, 106 A. 2d 225 (1954); *Morgan v. Phillips,* 385 Pa. 9, 122 A. 2d 73 (1956); *Consolidated Tile & Slate Co. v. Fox,* 410 Pa. 336, 189 A. 2d 228 (1963).

Finally, we find no abuse of discretion by the lower court in refusing a new trial because of the alleged after-discovered evidence.

In order to warrant a new trial for this reason, the evidence must, inter alia, be new, discovered since the trial and be such as could not have been discovered before the trial by the use of reasonable diligence: *Helmig v. Rockwell Mfg. Co.,* 389 Pa. 21, 131 A. 2d 622 (1957); *Commonwealth v. Schuck,* 401 Pa. 222, 164 A. 2d 13 (1960).

The lower court found that in reference to this "new evidence" Goodman "failed to make out even a rudimentary case of diligence." This conclusion is amply supported by the record. The court noted significantly that the "new evidence" would be important only in regard to mitigation of damages and not to the

question of liability. At trial, Goodman made no effort to mitigate damages; his sole defense concerned liability.

Judgment affirmed.