Peter W. **CREAMER**, III

v.

**AIM TELEPHONES, INC.**

Civ. A. No. 91–3964.

United States District Court,
E.D. Pennsylvania.

Sept. 8, 1993.

Peter A. Lesser, Jon C. Sirlin and Associates, P.C., Jon C. Sirlin, Philadelphia, PA, for Peter W. Creamer, III.

John P. McShea, Charles L. Howard, Hoyle, Morris & Kerr, Philadelphia, PA, for Aim Telephones, Inc.

## MEMORANDUM

DALZELL, District Judge.

Plaintiff Peter W. Creamer, III, filed this breach of contract action in the Philadelphia County Court of Common Pleas against his former employer, defendant Aim Telephones, Inc. ("Aim"), seeking to recover back wages and various benefits to which he believes he is entitled under a Salary Continuation Agreement he had with Aim. On July 10, 1991, Aim removed the action to this Court on the basis of diversity of citizenship.

In January of 1992, after the parties had filed summary judgment motions, but before we could resolve them, Aim filed for reorganization pursuant to Chapter 11 of the Bankruptcy Code, and the United States Bankruptcy Court for the District of New Jersey entered an automatic stay on

all claims against property in Aim's control. We therefore stayed the instant action and placed it in civil suspense pending further action in the Bankruptcy Court.

In April of 1993, the Bankruptcy Court issued an Order granting Creamer relief from the automatic stay, thus allowing him to pursue his claim. In response to this Order, we directed the Clerk of Court to remove the case from civil suspense, and invited the parties to file supplemental briefs in support of their previously filed summary judgment motions. The parties declined our invitation.

Upon consideration of those motions, and for the following reasons, we will deny Aim's motion but grant Creamer's.

*Background*

The facts necessary to decide the pending summary judgment motions are undisputed.

In January of 1981, Creamer worked at Gray Communications ("Gray"), an unincorporated subdivision of Sargent Electric, Incorporated ("Sargent"). Creamer began his tenure at Gray as the Manager of Operations, but was promoted to Vice–President of Operations and eventually became Gray's Senior Vice–President. On February 1, 1985, Creamer and Sargent entered into the Salary Continuation Agreement ("SCA") that is at the heart of this case, and which provided, in pertinent part:

> WHEREAS, Executive has been employed by the Company in the capacity of Vice President and by reason thereof has acquired experience and knowledge of considerable value to the Company; and
> WHEREAS, the Company wishes to offer an inducement to Executive to remain in its employ by compensating him beyond his regular salary for services which he has rendered or will hereafter render, and
> WHEREAS, Executive, is willing to continue in the employ of the Company until his retirement,
> NOW, THEREFORE, it is mutually agreed as follows:
> (1) The Company hereby employs Executive in the capacity of Vice President commencing with the date of this Agreement, and Executive hereby accepts such employment, the conditions of which are hereinafter set forth in the Agreement.
> (2) As compensation for his services the Company hereby agrees to pay Executive, and Executive agrees to accept from Company, a yearly salary to be determined by the Board of Directors of the Company.
> (3) If Executive remains in the continuous employ of the Company, he shall retire from active employment with the Company on the first day of the calendar month following the month in which he reaches age sixty-five (65), unless by action of the Board of Directors his period of active employment shall be shortened or extended.

SCA, Exhibit B to Defendant's motion for summary judgment ("Defendant's motion").

In May of 1988, Aim merged with Gray and assumed all of Gray's debts, liabilities and duties, including Gray's obligations to Creamer under the Salary Continuation Agreement.

Beginning in 1989, Aim began experiencing financial difficulties. In October of 1990, Aim's board of directors pressured the company's chief executive officer to resign and Aim hired a new management team. Later that month, the new management changed Creamer's compensation from an $81,900 base salary with no commission to a $60,000 base salary with the potential for up to $20,000 in commissions based on performance. *See* Creamer dep. at 170–171, Exh. A to Defendant's motion. It ordered this change without the board of directors' enabling action.

Less then two month later, on December 3, 1990, because of its financial troubles, Aim's new managers fired Creamer. As with the salary modification, Aim's management ordered Creamer's termination without first obtaining the board of directors' authorization.

Aim now contends that Creamer is not entitled to any of the benefits created in the SCA. According to Aim, the agree-

ment does not constitute an enforceable contract because Creamer did not provide consideration for Aim's promises in the agreement. Furthermore, Aim maintains that even if the agreement is an enforceable contract, Creamer did not satisfy the contractual precondition to acquiring the disputed benefits—that is, he did not remain with the company until his sixty-fifth birthday.

Creamer argues that the agreement is an enforceable contract that not only required Aim to obtain the board of directors' approval for both the reduction of Creamer's salary and his termination, but also prohibited Aim from terminating him without cause. Because Aim has admitted that Creamer's termination and salary reduction did not result from board action, and that the company had no cause to terminate Creamer, Creamer asserts that he is entitled to the value of the breached contract, *i.e.*, $600,000.00 in retirement benefits, $1,825.00 in wages,[1] and "in excess of $20,-000" in unliquidated damages for the cancellation of the disability and life insurance policies.

To resolve this dispute, Creamer filed the instant action. For the following reasons, we find that the SCA is an enforceable contract that Aim breached by both modifying Creamer's salary and terminating him from employment without the antecedent approval of the board of directors.[2]

*Discussion*

Summary judgment is of course appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party bears the initial burden of identifying for the Court those portions of the record that it believes demonstrate the absence of dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

To defeat summary judgment, the non-moving party "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

*Is There A Contract?*

Under Pennsylvania law (which, both sides agree, governs), a contract is only enforceable if there has been an offer, acceptance of that offer, and consideration. *Estate of Friedman v. Schoolman*, 483 Pa. 614, 634, 398 A.2d 615, 625 (1978) (*quoting Fahringer v. Strine Estate*, 420 Pa. 48, 53–55, 216 A.2d 82, 85–86 (1966)). The requirement of consideration means only that there must be a bargained for exchange so that each party to the contract confers a benefit on the other or causes a detriment to himself. *Cobaugh v. Klick–Lewis, Inc.*, 385 Pa.Super. 587, 591–592, 561 A.2d 1248, 1250 (1989). Here, Creamer and Aim agree that there was an offer and acceptance under the SCA when Sargent and Creamer executed the agreement. The parties disagree, however, as to whether Creamer proffered any consideration in return for the benefits package.

Creamer asserts that his consideration for the benefits lies in the "whereas" clauses of the agreement. In those clauses, Aim expressed its interest in inducing Creamer to continue in its employ and Creamer communicated his willingness to do so until his retirement. Aim contends, however, that Creamer's consideration can-

---

1. Creamer alleged in his complaint that $1,825.00 is the difference between what he would have earned from October 1990 to December 1990 at his original $81,900.00 salary and what he actually earned during that same period at his reduced salary.

2. In view of the sums at issue, and the parties' diverse citizenship, we have jurisdiction over this subject matter pursuant to 28 U.S.C. § 1332(a)(1).

not be found in these clauses because "whereas" clauses are inoperative and are not binding on the parties to the agreement. Aim further maintains that, apart from the "whereas" clauses, Creamer offered no consideration for the agreement.

■ We disagree. Although we do not believe that the terms of the SCA required Creamer to remain in Aim's employ,[3] we do believe that the doctrine of promissory estoppel prohibits Aim from repudiating its promises in the agreement. Pennsylvania has adopted the Restatement of Contracts § 90, which defines promissory estoppel as:

A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

See Fried v. Fisher, 328 Pa. 497, 501, 196 A. 39, 41 (1938); Sunseri v. Sunseri, 358 Pa. 1, 6, 55 A.2d 370 (1947).

Aim promised Creamer that if he remained in Aim's employ, the company would not only require its board of directors to approve his salary changes as well as decisions regarding his termination, but it would also pay him significant retirement benefits when he reached the age of sixty-five. The "whereas" clauses of the SCA make clear that Aim intended and expected these promises to "induce"

Creamer, whose expertise Aim valued, to remain in the employ of the company.[4] See SCA, Exh. B to Defendant's motion. It should not be surprising to Aim, therefore, that Creamer did in fact rely on the representations Aim made to him and remained in Aim's employ until new Aim officers abruptly terminated him in 1990.[5]

Under these circumstances, for Aim now to argue that has always been free to revoke the benefits at any time is inconsistent with the stated purpose and covenants of the agreement.[6] We will therefore require that Aim abide by the promises it made in the agreement based upon Creamer's forbearance from selecting other employment for himself as constituting adequate consideration for Aim's promises of benefits.

■ Alternatively, we believe that Creamer provided consideration for Aim's promises by voluntarily relinquishing one of his statutory rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. Under the ADEA, absent a bona fide retirement plan, an employer may not force an employee to retire from his or her job until the employee reaches the age of seventy. 29 U.S.C. §§ 623(f)(2), 631(a). Creamer, however, voluntarily waived his statutory right to work until that age by signing the SCA which required him to retire at the age of sixty-five—or even earlier if the board of

3. Creamer stated during his deposition that although the SCA discouraged him from leaving Aim, he always believed that he was free to "walk[ ] away from the deal" at any time as long as he "paid the penalty" of forfeiting the benefits under the agreement. Creamer at 106–107, Exh. A to Defendant's motion.

4. In terms of contract interpretation, the information in whereas clauses is useful because it sets forth the context in which the agreement was contemplated and signed. See John Edward Murray, Jr., Murray on Contracts § 88.B (3d Ed.1990). Such information should be "persuasive but not controlling in determining the intention or purpose of the parties." Id. If, however, as in the instant case, there is no inconsistency between the body of the contract and its stated premises, and the contract is not ambiguous, there is no reason to disbelieve the purposes described in the "whereas" clauses.

5. Aim points out in its motion for summary judgment that Creamer had been investigating employment opportunities with other companies before Aim terminated him. We do not believe, however, that such explorations violated the Salary Continuation Agreement because the agreement did not indenture Creamer to forego other employment options.

6. There is other language in the SCA that strongly suggests that Aim intended the agreement to constitute a contract. For example, the agreement states that:

(13) This agreement may be revoked or amended in whole or in part by a writing signed by both of the parties hereto.

SCA, Exh. B to Defendant's motion. If Aim truly believed the benefits in the SCA to be gratuities, it never would have included such a provision in the agreement.

directors so desired.[7] We therefore believe that Creamer provided additional consideration for the agreement through this surrender of his rights under the ADEA.

*Was The Contract Breached?*

■ Having established that Creamer provided consideration for Aim's promises and that the SCA therefore constitutes a valid and enforceable contract, we turn to the question of whether Aim breached that contract.

According to Creamer, the SCA transformed him from an employee at will to an employee who could only be terminated for cause. Creamer therefore argues that Aim breached the agreement by terminating him without cause. Recognizing that we may reject this expansive theory, Creamer alternatively argues that Aim breached the agreement by terminating him and changing his salary structure without any board of directors' action.

Aim rejoins that Creamer's claim that the SCA prohibited Aim from terminating Creamer without cause is meritless because the agreement says nothing about protecting Creamer from at will discharge. Aim further contends that Creamer is entitled to no relief under the contract because he did not fulfill his limited obligations under the SCA—that is, he did not continue employment with the company until he reached the age of sixty-five.

We agree with Aim that the Salary Continuation Agreement, by its own terms, does not provide that Creamer could be terminated only for cause. There is no language in the agreement which even begins to suggest that the reasons for which Aim could terminate Creamer were limited. Without such language, we will not read protection from at will discharge into the contract.

We do believe, however, that the contract explicitly limits the procedures by which Aim could terminate Creamer or change his compensation. The agreement expressly states that Creamer's "yearly salary" is "to be determined by the Board of Directors of the Company" and that "his period of active employment" can only be "shortened or extended" "by action of the Board of Directors".[8] SCA at ¶¶ 2–3, Exh. B to Defendant's motion. Because Aim both changed Creamer's salary and terminated him *without* action by the board of directors, we believe that Aim breached the agreement.

*Damages*

■ Creamer's request, however, that we award him over $600,000 in damages as a remedy for this breach has no rational basis in fact. The SCA did not guarantee Creamer that Aim would never terminate him or that he would receive full retirement benefits regardless of when he was

---

**7.** Although the ADEA does not prohibit the mandatory retirement of a sixty-five year old "bona fide" executive who "is entitled to immediate nonforfeitable annual retirement benefit from a pension, profit-sharing, savings, or deferred compensation plan, or any combination of such plans, of the employer of such employee, which equals, in the aggregate, at least $44,000", 29 U.S.C. § 631(b)(1), there is no evidence in the record that Creamer qualified as such an executive prior to the signing of the agreement.

**8.** Aim claims that ¶ 3 of the SCA, which states that Creamer shall retire at age sixty-five "unless by action of the Board of Directors his period of active employment shall be shortened or extended", did not require Aim to get the board of directors' approval before terminating Creamer. *See* Defendant's motion at 22–23. According to Aim, that paragraph required board action only for changes in Creamer's retirement date, not for termination decisions.

The interpretation and application of a contract provision, however, is the function of the Court as long as the provision is unambiguous, *Goldinger v. Boron Oil Co.*, 375 F.Supp. 400, 413 (W.D.Pa.1974), *aff'd*, 511 F.2d 1393 (3d Cir.), *cert. denied*, 423 U.S. 834, 96 S.Ct. 59, 46 L.Ed.2d 52 (1975), and we do not believe that ¶ 3 of the SCA is ambiguous.

¶ 3 explicitly states that only the board of directors may shorten or extend Creamer's period of active employment. Such a shortening or extension can be accomplished not only by forcing Creamer to retire before he reaches sixty-five or requiring him to work past age sixty-five to receive his benefits, but also by terminating him before his retirement benefits even vest. Aim's suggestion that the paragraph's protection does not include protection against termination without benefits thus finds no support in the text of the unambiguous agreement, and so we reject it.

terminated. To the contrary, the only job security the SCA provided Creamer was the assurance that Aim could not terminate him except by action of the board of directors. We will therefore award him the only unqualified benefit for which he bargained, that is, job security subject to the action of the board of directors, and we will require Aim to reinstate him at his original $81,900 salary with back wages and benefits until the board of directors directs his salary be changed or his job eliminated.

Under these theories, Aim should pay Creamer $1,980.00, plus six percent prejudgment interest per annum, *see* 41 Pa. Cons.Stat.Ann. § 202, to reimburse him for the difference between his $81,900.00 salary and his $60,000.00 actual salary between October 31, 1990,[9] when his salary was reduced, and December 3, 1990 when he was terminated.[10] It should also pay him $226,403.00, plus six percent simple interest per annum,[11] for his lost salary between December 3, 1990 and today's date.[12]

For the foregoing reasons, we will deny Aim's motion for summary judgment and grant Creamer's. An appropriate Order follows.

### ORDER AND JUDGMENT

AND NOW, this 8th day of September, 1993, upon consideration Peter W. Creamer's motion for summary judgment and the response of Aim Telephones, Inc. ("Aim"), as well as Aim's motion for summary judgment and Creamer's response thereto, for the reasons stated in the foregoing memorandum, it is hereby ORDERED that:

1. Creamer's motion for summary judgment is GRANTED;

2. Aim's motion for summary judgment is DENIED;

3. JUDGMENT IS ENTERED in favor of Peter W. Creamer, III, and against Aim Telephones, Inc. in the amount of Two Hundred Forty–Seven Thousand Four Hundred Eighty–Four Dollars and Seventy Cents ($247,484.70); and

4. Aim shall immediately reinstate Creamer at an annual salary of $81,900.

---

9. The parties tell us that Aim reduced Creamer's salary sometime in October of 1990. Because we have no more specific information, we will assume that the date of the reduction was October 31, 1990.

10. Creamer was employed for only thirty-three days at the reduced salary, and the annual difference between his original salary and reduced salary was $21,900.00. Creamer is therefore entitled to $1,980.00, which is the product of $21,900.00 times 33/365. His interest entitlement on this base for 2.764 years is $328.36.

11. The interest on this base for 2.764 years is $18,773.34.

12. Aim has not raised the defense of mitigation of damages, *see Lazarus v. Goodman,* 412 Pa. 442, 447, 195 A.2d 90, 92 (1963), and at this late date that defense must be regarded as waived, particularly given Aim's decision to make no supplemental submission despite our invitation to it to do so.